# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BUBBLE DOWN, LLC,

     Plaintiff,

v.                                   Case No. 8:25-cv-315-KKM-CPT

REAL CAPITAL PARTNERS,
GP, LLC et al.,

     Defendants.

_____

## ORDER

     Bubble Down, LLC, sues Real Capital Partners GP, LLC (doing business as Sud Stop Car Wash), Christopher Harris, and Robert Consalvo for trademark infringement, unfair competition, and copyright infringement. *See* Compl. (Doc. 1). The defendants move to dismiss the complaint as an impermissible shotgun pleading, arguing that Bubble Down improperly asserts "multiple claims against multiple defendants without specifying which of the Defendants is responsible for which acts or omissions." MTD (Doc. 18) at 4. The defendants also claim that Bubble Down fails to allege facts that would make Harris or Consalvo liable. *See id.* at 6–10. Bubble Down opposes. Resp. (Doc. 24). For the following reasons, I deny the defendants' motion.

## I.     BACKGROUND

Bubble Down owns and operates several car wash facilities in Florida. Compl. ¶¶ 11–13. To promote its business, "Bubble Down has invested significant resources to develop numerous word marks, designs, and logos that it uses in connection with the services it provides." *Id.* ¶ 13. Specifically, Bubble Down owns trademark and copyright registrations for its "Smile Face Design" logo, which it uses to promote its car washing business in "website marketing, social media marketing, sponsorships, public outreach events, and through other means." *Id.* ¶¶ 13, 19–24. According to Bubble Down, "the relevant consuming public has come to identify the Smile Face Design with [its] brand and its car washing facilities." *Id.* ¶ 23.

Defendants Harris and Consalvo own and operate Sud Stop,[1] a Nevada limited liability company and competitor car washing business with at least one facility in Florida. *Id.* ¶¶ 8–9, 14. Bubble Down alleges that "Sud Stop's car wash facilities utilize and display a logo that incorporates numerous features that are distinctive to Bubble Down's Smile Face Design." *Id.* ¶ 14. Sud Stop also uses the logo in its online advertising. *See id.* ¶¶ 17–19; Ex. A (Doc. 1-1).

---

[1] The complaint also alleges that Harris and Consalvo are Co-Chairmen and, respectively, CEO and President of Real Capital Partners GP, LLC, the "General Partner of Sud Stop." Compl. ¶¶ 52–53. At all other times, the complaint does not distinguish between Real Capital Partners and Sud Stop, and the defendants do not appear to contest that representation.

Upon learning of Sud Stop's similar logo, Bubble Down explained to the defendants "how [it] needed to protect its brand and guard against consumers confusing Sud Stop with the Bubble Down brand" and demanded that the defendants cease and desist using their similar logo. *Id.* ¶ 15. The defendants refused the demand, and Bubble Down sued. *Id.* ¶ 16.

Against all three defendants, Bubble Down brings claims under the Lanham Act for trademark infringement (Count I) and unfair competition (Count II), as well for common law unfair competition (Count III) and copyright infringement under the Copyright Act (Count IV). *See* Compl. ¶¶ 27–50. Bubble Down brings a vicarious copyright infringement claim against Harris and Consalvo (Count V), both of whom it alleges "had the power to control, supervise, and direct the activities of Sud Stop" and "directly benefitted financially from the infringing activities." *Id.* ¶¶ 54–56. The defendants move to dismiss the entire complaint as a shotgun pleading and argue that Bubble Down fails to allege facts establishing Harris's or Consalvo's personal liability. *See* MTD.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.  ANALYSIS

The defendants move to dismiss the entire complaint as a shotgun pleading, or, in the alternative, to dismiss all counts against Harris and Consalvo for lack of facts suggesting their personal liability, either directly or vicariously.[2] I address each argument in turn.

---

[2] The defendants also argue that Bubble Down fails to state a claim for vicarious copyright infringement against Sud Stop in Count V. MTD at 9–10. The defendants' argument is moot because Bubble Down concedes that Count V "is asserted against only Consalvo and Harris," not Sud Stop. Resp. at 8.

## A. Shotgun Pleading

The defendants assert that Bubble Down's complaint is an impermissible shotgun pleading because it "asserts 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.'" MTD at 4 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Bubble Down responds that accusing the defendants collectively does not run afoul of shotgun pleading rules because "the complaint can be fairly read to allege that all defendants are responsible for the accused conduct." Resp. at 6. I agree.

"Shotgun pleadings" are "[c]omplaints that violate either Rule 8(a)(2) or Rule 10(b), or both," by "fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1320, 1323. One kind of shotgun pleading commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. But "[t]he fact that defendants are accused collectively does not render the complaint deficient" so long as "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct," such that each defendant has notice of the claims against him. *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000);

*accord Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins.*, 953 F.3d 707, 733 (11th Cir. 2020); *see Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) ("When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."); *Whitehurst v. G & A Rest. Mgmt., Inc.*, No. 2:20-CV-67-MRM, 2020 WL 2062462, at *2 (M.D. Fla. Apr. 29, 2020) (rejecting shotgun pleading argument where it was "possible each Defendant could have engaged in all the acts" alleged).

Here, the defendants have adequate notice of the claims against them. In leveling allegations of trademark and copyright infringement against the "Defendants," the complaint asserts that Sud Stop, Harris, and Consalvo each committed the underlying infringing conduct. *See Crowe*, 113 F.3d at 1539. And it is reasonable to infer that each defendant could commit each act because Harris and Consalvo "direct[] Sud Stop's business activities within this State, District, and Division." Compl. ¶¶ 9–10; *see id.* ¶¶ 54–56. In fact, Sud Stop can only act through its agents. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) ("It is axiomatic that a corporation . . . cannot act other than through its officers, employees, and agents."). So, unlike complaints where "broad allegations are directed at a large and diverse group of defendants," Bubble Down's allegations are limited to specific infringing marks used by a single business and its two operators. *Sprint Sols., Inc. v. Fils-Amie*,

6

44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014) (citing *Pierson v. Orlando Reg'l Healthcare Sys.*, 619 F. Supp. 2d 1260, 1271–74 (M.D. Fla. 2009), *aff'd*, 451 F. App'x. 862 (11th Cir. 2012) (per curiam)). Because the complaint can be fairly read to aver that all three defendants are responsible for the alleged conduct, the complaint does not fail as a shotgun pleading.

### B. Direct and Vicarious Liability

The defendants next argue that Bubble Down "fails to allege specific facts that [Harris or Consalvo] personally engaged in or participated in the allegedly infringing or wrongful activity," and thus cannot be held personally liable, either directly or vicariously. MTD at 7–9. Bubble Down responds that when the factual allegations are accepted and construed in its favor, "it can be reasonably inferred that Consalvo and Harris actively and knowingly caused the infringement and therefore are personally liable." Resp. at 10. At this stage, I agree. Bubble Down sufficiently alleges that Harris and Consalvo participated in the infringing and unfairly competitive activities.

To start, "[b]ecause corporations are run by individuals, '[n]atural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act.'" *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1163–64 (11th Cir. 2022) (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). "An individual is personally liable if she actively and knowingly caused the infringement," meaning that she

"actively participated as a moving force in the decision to engage in the infringing acts." *Id.* at 1164 (citation modified); *see Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) (per curiam) (holding that "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity" is personally liable for that infringement). Likewise, under the Copyright Act, "[a]n individual, including a corporate officer who . . . personally participates in that activity is personally liable for the infringement." *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) (citation modified); *Software Brokers of Am., Inc. v. Doticom Corp.*, 484 F. Supp. 3d 1205, 1214 (S.D. Fla. 2020) ("[A] corporate officer can be held liable for copyright infringement based on his personal involvement and participation in the infringing activity." (citation modified)). An individual may also be vicariously liable if he "has the ability to supervise infringing activity and has a financial interest in that activity." *S. Bell Tel.*, 756 F.2d at 811; *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (recognizing the same).

The defendants mistakenly rely on Bubble Down's allegations regarding Harris's and Consalvo's "power to control, supervise, and direct" Sud Stop to argue that neither individual directly infringed. *See* MTD at 6–9. As explained above, though, Bubble Down's allegations of direct trademark and copyright infringement pertain equally to Harris and Consalvo. Sud Stop cannot act

without them, *United Techs.*, 556 F.3d at 1271, and Bubble Down's allegations make little sense otherwise. Viewed this way, Bubble Down's complaint fairly alleges each owner-operator's direct participation in the purportedly impermissible use of Bubble Down's logo. For example, "Defendants [Harris and Consalvo] have plans to open several more cash wash facilities . . . in Florida," received but "refus[ed] to comply" with Bubble Down's demand to stop using the "Bubble Logo," and "continue to advertise, promote, and market [Sud Stop's] car wash facilities with its Bubble Logo on the website." Compl. ¶¶ 14–18. Harris and Consalvo "used and continued to use" Bubble Down's protected marks in Sud Stop's car washing business, *id.* ¶ 35, and, according to Bubble Down, did so "willful[ly], knowing[ly], and intentional[ly]." *Id.* ¶¶ 30, 39, 42, 48; *see id.* ¶ 46 (Harris, Consalvo, and Sud Stop "knowingly used, distributed, and/or reproduced Bubble Down's Asserted Works, or derivates thereof, without Bubble Down's permission"). These allegations—imputed to each Sud Stop owner—show that they "actively participated as a moving force in the decision to engage in the infringing acts," *Edmondson*, 43 F.4th at 1164 (citation modified), and "personally participate[d]" in the infringement, *S. Bell Tel.*, 756 F.2d at 811.

In the alternative, Bubble Down sufficiently alleges that Harris and Consalvo are vicariously liable for Sud Stop's direct copyright infringement. On this score, Bubble Down asserts Sud Stop knowingly used its copyrighted

works without permission and provides examples of that use, both online and at Sud Stop's physical locations. *See* Compl. ¶¶ 45–50; Ex. A (showing online and retail displays of the disputed Bubble Logo). Bubble Down then claims that Harris and Consalvo, in their co-chair and officer roles, "control, supervise, and direct the activities of Sud Stop," "directly benefitted financially from the infringing activities of Defendant Sud Stop," and "had the right and ability to supervise and control the infringing activities of Sud Stop." Compl. ¶¶ 54–56. Construing all inferences in Bubble Down's favor, those facts, while perhaps not teeming with detail, are sufficient to allege Harris's and Consalvo's "ability to supervise" and "financial interest" in Sud Stop's infringing activity, the two prerequisites for holding a corporate officer vicariously liable for copyright infringement. *S. Bell Tel.*, 756 F.2d at 811.

## IV.    CONCLUSION

Accordingly, the following is **ORDERED**:

1.    Defendants' Motion to Dismiss (Doc. 18) is **DENIED.**

2.    Defendants must file an answer to the complaint no later than **January 16, 2026.**

**ORDERED** in Tampa, Florida, January 5, 2026.

Kathryn Kimball Mizelle
United States District Judge

10